1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SEAWAY PROPERTIES, LLC,

        Plaintiff,

   v.

FIREMAN'S FUND INSURANCE
COMPANY, et al.,

        Defendants.

CASE NO. C13-633RAJ

ORDER

## I.  INTRODUCTION

This matter comes before the court on the parties' cross-motions for summary judgment.  No party requested oral argument and the court finds oral argument unnecessary.  For the reasons stated below, the court GRANTS in part and DENIES in part Defendants' motion for summary judgment (Dkt. # 19) and GRANTS in part and DENIES in part Plaintiff's cross-motion for partial summary judgment (Dkt. # 26).  The court sets a December 8, 2014 trial date, and directs the clerk to issue a new order setting pretrial deadlines.

## II.  BACKGROUND

Plaintiff Seaway Properties, LLC ("Seaway") owns a property located at 2940 Southwest Avalon Way in West Seattle.  A building situated on the property houses at

ORDER – 1

least two tenants: a salon and a restaurant named Cafe Revo.  Ciao Bella Foods, LLC ("Ciao Bella") operated Cafe Revo and leased the restaurant space from Seaway.

In January 2010, a woman on her way to Cafe Revo fell as she attempted to step down from a concrete platform between the building parking lot and the entrance to the restaurant.  There is no dispute that the platform and the space below it onto which she fell were common areas of Seaway's property.  Seaway's lease gave Ciao Bella the right to use those common areas (which included the parking lot), but did not grant Ciao Bella exclusive control over the common areas.  By contrast, Ciao Bella had exclusive control over that portion of the Seaway property that contained the Cafe Revo restaurant.  The woman who fell from the platform suffered injuries for which she claimed that both Ciao Bella and Seaway were liable.

Seaway's lease to Ciao Bella required Ciao Bella to maintain commercial general liability insurance and to "name [Seaway] and any designees of [Seaway] as additional insureds under all of [Ciao Bella]'s insurance policies . . . ."  Lease ¶ 10.[1]  Ciao Bella in turn purchased an insurance policy from Defendant Fireman's Fund Insurance Company (the "Policy").  The Policy contained a "Blanket Additional Insured" endorsement that covered Seaway as an additional insured for liability arising out of the use of premises that Seaway leased to Ciao Bella.  Policy at 285.[2]

The court refers to Ciao Bella's insurer as Fireman's Fund even though it is not the insurer named in the Policy.  The cover page of the Policy bears Fireman's Fund's name and logo, but declares that Associated Indemnity Corporation ("AIC") is the insurer.  Policy at 189.  No one disputes that AIC is a subsidiary of Fireman's Fund or that the two companies share some directors and officers.  Fireman's Fund insists that

---

[1] The court cites the version of the lease at Exhibit C to the declaration of Emilia Sweeney.  Dkt. # 19.

[2] The court cites the version of the Policy at Exhibit D to the declaration of Emilia Sweeney (Dkt. # 19), using the last two or three digits of the Bates number stamped at the lower right corner of each page.

ORDER – 2

AIC is the sole insurer in this case, Seaway contends either that Fireman's Fund is AIC's alter ego or that Fireman's Fund acted as AIC's agent with respect to the events giving rise to this lawsuit.  The court will consider that dispute near the end of this order.  Until then, because virtually everyone involved with this dispute (including Fireman's Fund and its counsel) referred to Ciao Bella's insurer as Fireman's Fund throughout the events that led to this lawsuit, the court will also refer to the insurer as Fireman's Fund.

Fireman's Fund had notice of the injured woman's claim no later than November 2010.  A claim notice in Fireman's Fund's claim file establishes that Fireman's Fund knew not only of the claim, but of the need to discuss the claim with Ciao Bella's "landlord."  Dobran Decl. (Dkt. 21), Ex. A (claim file at AIC 71).  No later than December 2010, a woman named Audrey Hopkins using an email address bearing the "ffic.com" domain name was handling the claim.  *Id.* (claim file at AIC 81) (Dec. 22, 2010 email).  By January 2011, Fireman's Fund knew that Seaway was the "landlord" and that Seaway sought defense and indemnity.  *Id.* (claim file at AIC 90) (Jan. 3, 2011 email, not designating which of five "Fireman's Fund Insuring Companies" Ms. Hopkins represented).  As late as April 2011, Ms. Hopkins was communicating with Seaway's insurance agent over the need to obtain a complete copy of Ciao Bella's lease.  *Id.* (claim file at AIC 134) (Feb. 9, 2011 letter designating Ms. Hopkins as an AIC adjuster); Stolle Decl. (Dkt. # 24), Ex. 34 (Apr. 14, 2011 letter designating Ms. Hopkins as an AIC adjuster).  As noted, Ms. Hopkins sometimes designated herself as an AIC adjuster, sometimes she did not.

The injured woman's suit against Seaway and Ciao Bella began in March 2011. In March 2012, Seaway demanded that both Ciao Bella and its insurer indemnify and defend it, although its demand letter did not identify Ciao Bella's insurer by name.  Stolle Decl. (Dkt. # 24), Ex. 9 (Mar. 28, 2012 letter).  Seaway's demand to Ciao Bella itself relied on a portion of the lease that required Ciao Bella to indemnify and defend Seaway for liability "arising out of any accident or other occurrence on or to the Premises,

ORDER – 3

Building or Common Areas, causing injury . . . , by reason of the condition or use of the Premises . . . ." Lease ¶ 23.2.

Ciao Bella's counsel quickly forwarded Seaway's March 2012 demand letter to someone named Anthony Togias, whose email address also used the domain name "ffic.com." Stolle Decl. (Dkt. # 24), Ex. 9 (Mar. 30, 2012 email). By the time Ciao Bella's counsel wrote in early May 2012 to deny Seaway's request for indemnity from Ciao Bella, Geoffrey Dobran, a Fireman's Fund claim adjuster, had been assigned to the claim. Dobran Decl. (Dkt. # 21), Ex. A (claim file at AIC 157-58) (May 2, 2012 letter forwarded to G. Dobran); *see also* Dobran Decl. (Dkt. # 21) ¶ 1 ("I am employed by Fireman's Fund . . . as a Claims Adjuster III, and was so employed during all pertinent times herein.").

Seaway did not tender a claim directly to Fireman's Fund until July 2012, when it demanded a defense and indemnity. Stolle Decl. (Dkt. # 24), Ex. 15 (Jul. 13, 2012 letter). On the same day, counsel for Ciao Bella wrote to Seaway to refuse again Seaway's request for a defense and indemnity. Counsel stated that he was "authorized to convey the concurrence of Fireman's Fund, as insurer for Ciao Bella . . . ." *Id.*, Ex. 16 (Jul. 13, 2012 letter).

On the last day of July, Mr. Dobran wrote Seaway to explain that he was reviewing Seaway's tender. Stolle Decl. (Dkt. # 24), Ex. 18. His email (like Ms. Hopkins' emails) bore a signature block containing the names of five insurers, including Fireman's Fund and AIC. *Id.* Mr. Dobran checked the box next to AIC. *Id.* He did so again on August 6, when he responded to Seaway's reminder that a mediation of the personal injury suit was scheduled for August 8. *Id.*, Ex. 19 (Aug. 6, 2012 email).

The August mediation was unsuccessful. Seaway contends that Fireman's Fund refused at the mediation to pay for Seaway's portion of any settlement. Stolle Decl. (Dkt. # 24) ¶ 20.

ORDER – 4

In September 2012, Seaway sent a second tender of its claim to Fireman's Fund. Stolle Decl. (Dkt. # 24), Ex. 20 (Sept. 7, 2012 letter). By then, Fireman's Fund had hired outside counsel, who wrote Seaway shortly thereafter to announce its representation of "Fireman's Fund" in the dispute. *Id.*, Ex. 21 (Sept. 13, 2012 letter). Outside counsel stated that it was reviewing Seaway's second tender.

On September 25, 2012, nearly two years after Fireman's Fund first learned of the personal injury that gave rise to this dispute, outside counsel issued Fireman's Fund's first formal denial of Seaway's claim. Fireman's Fund asserted that Seaway was not an insured under the Policy, and thus had no rights under the Policy. Stolle Decl. (Dkt. # 24), Ex. 22. Seaway wrote back on October 1, disputing the September 25 letter. Fireman's Fund did not respond to the substance of that letter until November 9, when it once again asserted that Seaway was not an insured under the Policy. Stolle Decl. (Dkt. # 24), Ex. 27.

Seaway and Ciao Bella settled with the injured woman in February 2013, with Seaway paying a portion of the settlement and incurring defense costs. According to Seaway, its defense costs tripled in the time between the August 2012 mediation and the February 2013 settlement. Stolle Decl. (Dkt. # 24) ¶ 29. Seaway's insurer ultimately paid just $5,000 toward the settlement. *Id.*, Ex. 28. Shortly thereafter, the court held a bench trial on Seaway's claim for indemnity from Ciao Bella via the lease. The court held that the accident giving rise to the suit did not fall within the scope of the indemnity clause because it did not occur "by reason of the condition or use of the Premises" within the meaning of the lease. Neither Fireman's Fund nor AIC was a party to the personal injury suit, and the court's ruling that the lease did not obligate Ciao Bella to indemnify Seaway did not address whether the Policy covered Seaway.

At about the same time, Seaway filed this suit against both Fireman's Fund and AIC, contending that they wrongfully failed to defend and indemnify it. The operative complaint asserts that Fireman's Fund not only breached the Policy, it committed the tort

ORDER – 5

1  of bad faith and violated the Washington Consumer Protection Act ("CPA") and

2  Washington's Insurance Fair Conduct Act ("IFCA").

3      Fireman's Fund's motion for summary judgment asks the court to declare, as a

4  matter of law, that Seaway is not an insured under the Policy, and that even if it were an

5  insured, the Policy provides no coverage to Seaway in this case.  It asks the court to

6  dismiss all of Seaway's claims in light of that ruling.  Seaway, in its cross-motion, asks

7  the court to hold as a matter of law that Seaway is liable for breach of the Policy, bad

8  faith, violations of the CPA, and violations of IFCA.  It does not ask the court to

9  determine its damages.

10                    **III.  ANALYSIS**

11      On a motion for summary judgment, the court must draw all inferences from the

12  admissible evidence in the light most favorable to the non-moving party.  *Addisu v. Fred*

13  *Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  Summary judgment is appropriate

14  where there is no genuine issue of material fact and the moving party is entitled to a

15  judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party must initially show

16  the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

17  323 (1986).  The opposing party must then show a genuine issue of fact for trial.

18  *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The

19  opposing party must present probative evidence to support its claim or defense.  *Intel*

20  *Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).  The

21  court defers to neither party in resolving purely legal questions.  *See Bendixen v.*

22  *Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999).

23      Most of the issues the parties raise in their motions require the court to interpret

24  the Policy.  In Washington, insurance policy interpretation is a legal question.  *Overton v.*

25  *Consolidated Ins. Co.*, 38 P.3d 322, 325 (Wash. 2002) ("Interpretation of insurance

26  policies is a question of law, in which the policy is construed as a whole and each clause

27  is given force and effect.").  The court must give the terms of the policy a "fair,

28  ORDER – 6

reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance." *Id*. (internal quotation omitted).  Terms defined within a policy are to be construed as defined, while undefined terms are given their "ordinary and common meaning, not their technical, legal meaning." *Allstate Ins. Co. v. Peasley*, 932 P.2d 1244, 1246 (Wash. 1997).  Dictionaries may assist in determining the ordinary meaning of a term.  *Boeing Co. v. Aetna Cas. & Sur. Co.*, 784 P.2d 507, 511 (Wash. 1990).  If policy language on its face is fairly susceptible to two different but reasonable interpretations, ambiguity exists.  *Peasley*, 932 P.2d at 1246 (cited in *Petersen-Gonzales v. Garcia*, 86 P.3d 210 (Wash. Ct. App. 2004)); *Allstate Ins. Co. v. Hammonds*, 865 P.2d 560, 562 (Wash. Ct. App. 1994) (ambiguity exists "when, reading the contract as a whole, two reasonable and fair interpretations are possible.").  Extrinsic evidence may provide the meaning of an ambiguous term, but only where that evidence shows that both parties to the policy intended a particular meaning.  *Am. Nat'l Fire Ins. Co. v. B&L Trucking & Const. Co.*, 951 P.2d 250, 256 (Wash. 1998); *see also Quadrant Corp. v. Am. States Ins. Co.*, 110 P.3d 733, 737 (Wash. 2005) ("If a clause is ambiguous, [a court] may rely on extrinsic evidence of the intent of the parties to resolve the ambiguity.").  Because parties rarely negotiate the terms of an insurance policy, there is rarely evidence of the parties' mutual intent as to the meaning of a policy term.  Where extrinsic evidence does not resolve an ambiguity, the court must construe the ambiguous term in favor of the insured.  *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 15 P.3d 115, 141 (Wash. 2000); *see also Hammonds*, 865 P.2d at 562 (directing courts to resolve ambiguity against insurer "even where the insurer may have intended another meaning").

**A.    Seaway Is an Additional Insured Under the Policy.**

The court begins its analysis of the Policy by considering the interpretation that Fireman's Fund articulated when it formally denied Seaway's tenders in September and November 2012.  The only basis Fireman's Fund offered before this lawsuit for refusing to defend or indemnify Seaway was that Seaway was not an insured.

ORDER – 7

1    The portion of the Policy that covers property damage and liability to others

2    contains a clause governing "Who Is An Insured."  Policy at 258.  That clause designates

3    insureds named in the Policy's declarations and some closely related people or entities as

4    insureds.  *Id.*  There is no dispute that Ciao Bella was a named insured.  The clause also

5    designates a number of additional insureds, including, for example, employees of the

6    named insured.  Policy at 258-59.  The Policy amends the additional insured clause with

7    the "Blanket Additional Insured" endorsement that the court has already mentioned.  It

8    provides as follows:

9         [The] Who Is An Insured [clause] is amended to include:

10             f.    Any person or organization that you are required by a written
                    insured contract to include as an insured, subject to all of the
11                   following provisions:

12                   (1)    Coverage is limited to [the additional insured's]
                           liability arising out of:
13
14                          (a)    the ownership, maintenance or use of that part
                                  of the premises, or land owned by, rented to, or
15                                 leased to you . . . .

Policy at 285.
16
17    The court begins with the plain language of the Policy, which provides that

18    Seaway is an additional insured if it is a "person or organization" that Ciao Bella was

19    "required by a written insured contract to include as an insured."  The Policy defines

20    "insured contract" to include a "lease of premises," Policy at 262, and no one disputes

21    that Ciao Bella's lease from Seaway is an insured contract.  Moreover, no one disputes

22    that the lease required Ciao Bella to include Seaway as an additional insured on all of its

23    insurance policies.  Lease ¶ 10.  The only dispute is Fireman's Fund's insistence that the

24    Blanket Additional Insured clause confers additional insured status only on entities who

25    meet the preliminary requirements stated in the clause *as well as the additional limits on*

26    *coverage*.  The court disagrees.

27
28    ORDER – 8

As a matter of law, the Blanket Additional Insured clause requires only that a lessor like Seaway demonstrate both that it is a lessor to a named insured and that the lease requires the named insured to name the lessor as an additional insured.  Fireman's Fund makes much of the "subject to all of the following provisions" phrase that ends the first portion of the Blanket Additional Insured clause, but it stretches that phrase well beyond reasonable construction.  The plain language of the Blanket Additional Insured clause dictates that the provisions following "subject to all of the following provisions" are merely limitations on the coverage afforded to a named insured.  That is because each of the "provisions" that follow expressly state limits on "coverage," not on who is an insured.  Subclause (f)(1), which is the subclause at issue here, begins with "Coverage is limited to . . . ."  Policy at 286.  Subclause (f)(2) begins "Coverage does not apply to . . . ."  Policy at 287.  Subclause (f)(3), the last of the referenced "provisions," begins "With respect to architects, engineers, or surveyors, coverage does not apply to . . . ."  Policy at 287.  In this context, the court doubts that anyone could reasonably construe the phrase "subject to the following" as a preamble to additional conditions on who qualifies as an additional insured, as opposed to imposing coverage limitations on one who qualifies as an additional insured via the portion of the clause that precedes the phrase.  But even if Fireman's Fund's preferred interpretation was reasonable upon reading the Blanket Additional Insured clause *by itself*, the rest of the Policy rejects that interpretation.  When the Policy, or more specifically the "Who Is An Insured" clause of which the Blanket Additional Insured clause is a part, imposes additional restrictions on who qualifies as an insured, it does so in language that leaves no doubt.  For example, the "Who Is An Insured" clause designates as additional insureds the employees of a named insured, but only in certain circumstances:

    2.    Each of the following is also an insured:

         a.    [The named insured's] employees, but only for acts within the
               scope of their employment by you.  However, *no employee is
               an insured for*:

ORDER – 9

(1)    Bodily injury, property damage, personal injury or advertising injury to you or to a co-employee while in the course of his or her employment . . . ; or

(2)    Bodily injury or personal injury arising out of any insured providing or failing to provide professional health care services; or

(3)    Property damage to property owned or occupied by or rented, leased or loaned to that employee . . . .

Policy at 258 (emphasis added).  Whereas the use of the phrase "subject to all of the following provisions" followed by a series of limits on "coverage" is (at best) an ambiguous way to limit who qualifies as an additional insured, the use of a phrase like "no employee is an insured for" is an unambiguous way to do so.  It is not reasonable to conclude that one portion of the "Who Is An Insured" clause accomplishes the simple task of placing restrictions on who qualifies as an insured in unmistakable language whereas a later portion of the same clause uses ambiguous (at best) language to do so.  Seaway is, as a matter of law, an additional insured.

**B.    The Policy Obligated Fireman's Fund to Both Defend and Indemnify Seaway in the Personal Injury Suit.**

In denying Seaway's tenders, Fireman's Fund relied solely on its erroneous assertion that Seaway is not an insured.  In this litigation, it argues in the alternative that the Policy does not cover Seaway with respect to the personal injury suit.  That argument, in turn, is comprised of two alternatives.  First, Fireman's Fund asserts that the accident giving rise to the personal injury suit did not occur on "that part of the premises, or land owned by, rented to, or leased to [Ciao Bella]," as the Blanket Additional Insured clause requires.  Second, it asserts that the accident did not "arise out of" the "use of that portion of the premises, or land owned by, rented to, or least to [Ciao Bella]," as the Blanket Additional Insured Clause requires.  Fireman's Fund's first assertion is correct as matter of law; its second assertion is incorrect as a matter of law.

ORDER – 10

The parties sharply dispute to the plain meaning of the term "premises" as it is used in the Policy.[3]  The court need not resolve that dispute.  Instead, the court assumes that Seaway correctly asserts that "premises" means not only the portion of Seaway's property that the lease dedicated to Ciao Bella's exclusive use (*i.e.*, the restaurant itself), but also those common areas (*e.g.*, the parking lot and the concrete platform from which the woman fell) to which the lease granted Ciao Bella more limited rights of access.

Accepting Seaway's preferred meaning of "premises" is but a preamble to a more important question, which is whether the concrete platform from which the woman fell is on "that part of the premises, or land owned by, rented to, or leased to [Ciao Bella]."  The answer, upon reading the Policy as a whole, is that it cannot be.  If the platform is on "that part of the premises . . ." then every common area designated in the lease is also on "that part of the premises," and the Blanket Additional Insured clause is a clause that converts Ciao Bella into Seaway's all-purpose insurer.  Imagine, for example, that a person having no business with Ciao Bella or any other tenant walked into the parking lot (a common area) by mistake, then slipped on ice in the parking lot and suffered injury.  Maintenance of the parking lot (including ice removal) is undisputedly the responsibility of Seaway.  Yet Seaway's liability in that instance would undisputedly arise out of the "use of that part of the premises . . . leased to [Ciao Bella]."  Thus the Policy would be a primary policy for *any* liability that Seaway incurs in a common area, even liabilities that have nothing to do with Ciao Bella.  That is not, as a matter of law, a reasonable construction of the Policy.

Whereas the court has little difficulty concluding that the platform from which the woman fell is not on "that part of the premises . . . leased to [Ciao Bella]," it is more difficult to decide whether the accident *arose from* the use of "that part of the premises."

---

[3] Fireman's Fund contends that Seaway is collaterally estopped from disputing the interpretation of "premises" that the court in the personal injury action reached in ruling against Seaway's claim for indemnity from Ciao Bella via the lease.  That is irrelevant here, where Seaway seeks a ruling on what "premises" means in the Policy.  The court in the personal injury action did not reach that issue.

ORDER – 11

Courts applying other states' laws have generally favored the insurer in answering that question. For example, the court in *Liberty Mut. Ins. Co. v. Mich. Mutual Ins. Co.*, 891 N.E.2d 99, 100 (Ind. Ct. App. 2008) considered a clause covering designated additional insureds for "liability arising out of the ownership, maintenance or use of that part of the premised leased to [the named insured] . . . ." At issue was a suit from a lessee's employee, who had fallen on an icy pathway (over a common area) on her way to work. *Id.* After reviewing cases from Illinois, Florida, Minnesota, and Missouri, *id.* at 103-04, the court concluded that the fall did not arise out of the use of leased premises:

> [T]he accident here did not occur on the part of the premises leased to [the lessee]. Rather it occurred in a common area outside of the leased premises and under [the lessor]'s control. Further, there was no physical connection between the accident and the leased premises or [the lessee]'s business operations thereon. . . . There is no allegation that the ice and snow on which [the lessee's employee] slipped originated on the leased premises, was caused by the leased premises, was connected to work done on the leased premises, or had any other significant connection with the leased premises. Rather, the accident in question clearly arose out of [the lessor]'s own failure to maintain the pathway from the parking lot to the employee entrance. The only way [the lessee's employee]'s fall was even remotely related to the leased premises was due to the fact [the employee] was on her way to work [at the lessee]. We deem this "isolated connection" insufficient to bring the accident within the coverage of the policy under the additional insured endorsement.

*Id.* at 105.

The court's review of case law suggests that most states' courts have reached the same conclusion as to policies with clauses materially identical to the Blanket Additional Insured clause. The mere fact that a person intending to visit a lessee is injured in a common area is insufficient to confer coverage on a lessor who is the lessee's additional insured. *See, e.g.*, *Fireman's Fund Ins. Co. v. Discover Prop. & Cas. Ins. Co.*, No. C08-3079 WHA, 2009 U.S. Dist. LEXIS 74435, at *15 (N.D. Cal. Aug. 21, 2009) ("Allowing coverage here would invite interminable and inconclusive litigation with the prospect that all or many tenants would be sued for contribution by mall owners on the theory that a victim was attracted to the mall, in part, by the tenant's store."); *Triton Dev. Corp. v.*

ORDER – 12

*Commerce & Indus. Ins. Co.*, No. 3:98-cv-1263 BF, 1999 U.S. Dist. LEXIS 23831, at *13-18 (N.D. Tex. May 4, 1999); *Shumway v. Eastway Plaza*, No. 00-1069-C, 2002 Mass. Super. LEXIS 56, at *12 (Mass. Super. Ct. Jan. 14, 2002); *Bossier Plaza Assocs. v. Nat'l Union Fire Ins. Co.*, 813 So.2d 1114, 1120 (La. App. 2002).

At least one court has reached the opposite conclusion. *Md. Cas. Co. v. Chicago & N. W. Transp. Co.*, 466 N.E.2d 1091 (Ill. Ct. App. 1984). That court considered whether the lessor of a train terminal was liable when a newsstand lessee's employee was assaulted in a common area of the train terminal. *Id.* at 1092, 1094. The lessee's insurance policy designated the lessor an additional insured "with respect to liability arising out of the ownership, maintenance or use of that part of the premises . . . leased to the named insured." *Id.* at 1093. The court concluded that the employee's injuries appeared "to have arisen from the operation and use of the leased premises, since they would not have been sustained 'but for' the victim's employment on those premises." *Id.* at 1094.

Were the court writing on a blank slate, it might follow the approach of courts in the majority of states. Limiting liability under an additional insured clause in a lessee's insurance policy to liability arising from something within the control of the lessee, instead of the lessor, best preserves the balance of liability inherent in a lessor-lessee relationship.

Instead, the court must apply Washington law, which gives a broad scope to the phrase "arising out of" in an insurance policy. This court has noted as much in a prior case. In *Continental Western Ins. Co. v. Costco Wholesale Corp.*, No. C10-1987RAJ, 2011 U.S. Dist. LEXIS 65635, at *6-7 (W.D. Wash. Jun. 21, 2011), the court examined Washington law addressing the "broad meaning" of the phrase "arising out of" in an insurance policy. The phrase requires only a causal contribution, and means less than "proximately caused by." *Id.* (citing *Transamerica Ins. Group v. United Pac. Ins. Co.*, 593 P.3d 156, 158 (Wash. 1979). The phrase is not, as a matter of law, ambiguous. *Id.* at

ORDER – 13

*7 (citing *Wash. State Toll Bridge Auth. v. Aetna Ins. Co.*, 773 P.2d 906, 908 (Wash. Ct. App. 1989). More striking than Washington courts' broad definition of "arising out of" is their broad interpretation of circumstances to which it applies. In *Equilon Enters. LLC v. Great Am. Alliance Ins. Co.*, 132 P.3d 758, 760 (Wash. Ct. App. 2006), the court considered liability arising from a criminal assault on a man in a gas station parking lot. A third party owned the station, and purchased gas from a distributor, who in turn had a contract with Shell. *Id.* at 759. The distributor included Shell as an additional insured on its general liability insurance, but only "with respect to liability arising out of [the distributor's] operations or premises owned by or rented to [the distributor]." *Id.* There was evidence that the young man who was assaulted saw Shell signs and therefore assumed that the gas station had adequate security. *Id.* at 760. The distributor's contract with Shell required it to place the Shell signs at the station, and thus the court concluded that the "presence of the signs was an aspect of [the distributor]'s ongoing operations," and that Shell's liability thus arose, at least in part, out of the distributor's operations. *Id.* at 762. That was enough, in light of the broad interpretation of "arising out of," to provide coverage for Shell under the distributor's insurance policy. *Id.* at 761-62 (reviewing cases interpreting "arising out of").

Even if the court had no more specific guidance than the foregoing Washington authority in considering the case now before it, it would likely conclude that Seaway's liability in this case arose out of the injured woman's use of the part of the premises it leased to Ciao Bella. The woman was on her way to Cafe Revo; she therefore intended to use the part of the premises leased to Ciao Bella. In Washington, that is probably enough of a causal connection to constitute liability "arising out of" the use of the leased premises.

The court need not reach its own conclusion about Fireman's Fund's liability in this case, however, because Ninth Circuit precedent dictates that the court must hold it liable. In *Am. Economy Ins. Co. v. Zurich Am. Ins. Co.*, 534 Fed. Appx. 645 (9th Cir.

ORDER – 14

2013), the court reversed a judgment from another of this District's judges. That judge considered a strikingly similar insurance dispute. A woman on her way to a salon appointment fell on a staircase between a parking lot and the entrance to the salon. *Am. Economy Ins. Co. v. Zurich Am. Ins. Co.*, No. C11-1070MJP, 2012 U.S. Dist. LEXIS 71303, at *2 (W.D. Wash. May 21, 2012). The salon's lease with the owner of the strip mall in which it was located required it to designate the lessor as an additional insured. *Id.* The salon's insurance policy extended coverage to the lessor only for "liability arising out of the ownership, maintenance, or use of that part of any premises leased to" the salon. *Id.* at *7-8. The district court held that the policy "only covered [the lessor] to the extent liability arose out of [the salon]'s lease," and that the policy did not cover an "injury [that] occurred in an area not leased" to the salon. *Id.* at *11. The Ninth Circuit reversed. It held that the fact that the customer was on her way to the salon was enough to show that her injuries arose out of the use of the salon. *Am. Economy*, 534 Fed. Appx. at 646. It "reject[ed] [the lessee's insurance company]'s narrow reading of the 'arising out of' provision to mean only 'arising inside of' the leased premises." *Id.* It relied on *Equilon*, which the court cited above, as well as other Washington precedent interpreting "arising out of" in insurance policies. *Id.*

The Ninth Circuit's ruling in *Am. Economy* dictates that this court must hold, as a matter of law, that the Policy covers Seaway and that Fireman's Fund breached its duty to defend and indemnify. The Ninth Circuit concluded that the insurer in *Am. Economy* refused to defend the lessor "based on a narrow interpretation of the policy's 'arising out of' language and a self-serving interpretation of case law." 534 Fed. Appx. at 646. It held that the lessee's insurer breached its duty to defend as a matter of law. *Id.* Moreover, even though it acknowledged that the duty to defend is broader than the duty to indemnify, it reversed the judgment and instructed the district court to enter judgment for the lessor's insurer. *Id.* It did so because the district court "erroneously construed coverage" to exclude the lessor. *Id.*

ORDER – 15

1

**C.   Fireman's Fund Is Liable for Bad Faith and at Least One Violation of the CPA and IFCA.**

2

The court now turns from Seaway's breach-of-policy claims to its claims for

3

extracontractual liability.  It asks the court to rule that Fireman's Fund is liable as a

4

matter of law for the tort of bad faith and violations of the CPA and IFCA.[4]

5

Bad faith claims, insurance-related CPA claims, and IFCA claims are similar.  An

6

insured's assertion of bad faith against her insurer is a tort claim.  *Safeco Ins. Co. of Am.*

7

*v. Butler*, 823 P.2d 499, 503 (Wash. 1992).  A denial of coverage is in bad faith if it is

8

unreasonable, frivolous, or unfounded.  *Overton*, 38 P.3d at 329-30.  Violation of

9

Washington's insurance regulations is evidence of bad faith.  *See Coventry Assocs. v. Am.*

10

*States Ins. Co.*, 961 P.2d 933, 935 (Wash. 1998).  Because Washington has declared that

11

insurance impacts the public interest, an insured establishes a CPA violation when it

12

proves injury to its business or property as a result of an act in bad faith.  *See Overton*, 38

13

P.3d at 330 (citing RCW § 19.86.020); *Kirk v. Mt. Airy Ins. Co.*, 951 P.2d 1124, 1126

14

(Wash. 1998) ("[T]he business of insurance affects the public interest . . . ."); RCW

15

§ 48.01.030 (declaring that "[t]he business of insurance is one affected by the public

16

interest"); *see also Indus. Indem. Co. of the N.W. v. Kallevig*, 792 P.2d 520, 530 (Wash.

17

1990) (holding that a single violation of WAC § 284-30-330 is sufficient to support a

18

CPA violation).  Unlike the CPA, IFCA directly targets insurance practices.  IFCA gives

19

a cause of action to a first-party insured against an insurer who "unreasonably denie[s] a

20

claim for coverage or payment of benefits."  RCW § 48.30.015(1).

21

**1.   Fireman's Fund Is Liable for Bad Faith.**

22

The Ninth Circuit's ruling in *Am. Economy* dictates that this court must hold that

23

Fireman's Fund acted in bad faith as a matter of law by refusing to defend and indemnify

24

Seaway.  After examining the lessor's insurer's breach of its duty to defend, the *Am.*

25

26

[4] Seaway's complaint includes a claim for negligence, but it did not mention that claim in
response to Fireman's Fund's summary judgment motion.  Seaway abandoned its negligence
claim.  Seaway also claimed that Fireman's Fund's bad faith estops it from denying coverage,
but the court need not reach that claim in light of its ruling that the Policy covers Seaway.

27

28

ORDER – 16

*Economy* court concluded that because the insurer did not "give to the insured 'the benefit of any doubt as to the duty to defend,'" it acted in bad faith as a matter of law. 534 Fed. Appx. at 646 (quoting *Am. Best Food, Inc. v. Alea London, Ltd.*, 229 P.3d 693, 700 (Wash. 2010)).  The court reaches the same ruling as to Fireman's Fund.

In addition, the court rules that Fireman's Fund acted in bad faith as a matter of law when it denied Seaway's tenders based solely on the conclusion that Seaway was not an additional insured.  As the court has already discussed, that conclusion was dubious even when based solely on the language of the Blanket Additional Insured endorsement. It was unreasonable as a matter of law when considered in light of language in other portions of the Policy defining who is an additional insured.

Fireman's Fund incorrectly contends that Seaway has pointed to no damages arising from its alleged bad faith.  Seaway's uncontroverted evidence shows that its defense costs increased between the August 2012 mediation and the February 2013 settlement of the personal injury suit.  A jury could conclude that Seaway would not have incurred at least a portion of those costs but for Fireman's Fund's bad faith refusal to provide a defense.

### 2.     Fireman's Fund Is Liable for at Least Two Violations of the CPA.

Seaway points to a host of Washington insurance regulations that Fireman's Fund allegedly violated.  Some of those alleged violations arise from Fireman's Fund's refusal to defend or indemnify Seaway; others arise from Fireman's Fund's long delays in informing Seaway that it would neither defend nor indemnify it.  The court will not address each of the dozens of regulations Seaway cites.  Seaway offered scarcely any argument addressing each regulation individually, and not much more in support of its assertion that Fireman's Fund violated multiple regulations.  It suffices to hold that Seaway violated at least two regulations, and thus violated the CPA at least twice. Seaway is free to assert other violations of the CPA at trial, if it believes that the

ORDER – 17

violations that the court identifies today are insufficient to permit it to recover all of its damages.

Fireman's Fund's failure to promptly respond to Seaway's tenders violated WAC § 284-30-330(2), which requires an insurer to "acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies." The regulations also require an insurer to "complete its investigation of a claim within thirty days after notification of claim, unless the investigation cannot reasonably completed in that time." WAC § 284-30-370. Fireman's Fund violated those regulations repeatedly. It knew about Seaway's claim as early as November 2010, but stopped pursuing the claim in April 2011 without ever informing Seaway of a coverage position. It claims that Seaway's failure to provide it with a complete copy of the lease excuses its conduct, but it does not explain why it did not continue to seek a copy of the lease. Once the personal injury suit began, Fireman's Fund knew no later than the end of March 2012 that Seaway was seeking indemnity and defense. Other than Ciao Bella's counsel's bare statement in early May 2012 that he was authorized to convey Fireman's Fund's refusal to defend or indemnify, Fireman's Fund took no coverage position until September 25, 2012. It delayed even though it knew that a mediation of the personal injury suit was scheduled for early August. Fireman's Fund attempts to shift the blame for its delays to Seaway, contending that Seaway both delayed in providing a copy of the lease and in sending its claim to AIC, rather than Fireman's Fund. *See* WAC § 330-30-370 ("All persons involved in the investigation of a claim must provide reasonable assistance to the insurer in order to facilitate compliance with [the 30-day deadline for completing investigation of a claim]."). But even once Fireman's Fund undisputedly had a complete copy of the lease and undisputedly knew about the claim, it took more than 30 days to complete its investigation. Fireman's Fund's delays were unreasonable as a matter of law.

Separately, Fireman's Fund's erroneous refusal to defend and indemnify Seaway violated WAC § 284-30-330(13), which requires it to "provide a reasonable explanation

ORDER – 18

of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim . . . ."  As the court has already discussed, Fireman's Fund relied solely on its unreasonable assertion that Seaway was not an additional insured.

### 3.    Fireman's Fund Violated IFCA.

Finally, Seaway has proven a violation of IFCA as a matter of law.  IFCA provides a cause of action to a "first party claimant to a policy of insurance who is unreasonably denied a claim for coverage or payment of benefits by an insurer . . . ." RCW 48.30.015(1).  For the reasons the court has already stated, Fireman's Fund unreasonably denied coverage to Seaway as a matter of law.

Seaway is mistaken, however, in its assertion that Fireman's Fund's violation of Washington insurance regulations is itself a violation of IFCA.  A court presiding over an IFCA suit can award enhanced damages and attorney fees in certain circumstances, including when the insurer violates certain Washington insurance regulations.

> (1)    Any first party claimant to a policy of insurance who is unreasonably denied a claim for coverage or payment of benefits by an insurer may bring an action in the superior court of this state to recover the actual damages sustained, together with the costs of the action, including reasonable attorneys' fees and litigation costs, as set forth in subsection (3) of this section.
>
> (2)    The superior court may, after finding that an insurer has acted unreasonably in denying a claim for coverage or payment of benefits or has violated a rule in subsection (5) of this section, increase the total award of damages to an amount not to exceed three times the actual damages.
>
> (3)    The superior court shall, after a finding of unreasonable denial of a claim for coverage or payment of benefits, or after a finding of a violation of a rule in subsection (5) of this section, award reasonable attorneys' fees and actual and statutory litigation costs, including expert witness fees, to the first party claimant of an insurance contract who is the prevailing party in such an action.

RCW § 48.30.015; § 48.30.015(5) (enumerating a host of insurance regulations).  By its plain language, IFCA gives an insured no right to sue solely for a violation of a Washington insurance regulation.  The right to sue arises solely from an unreasonable denial of a claim for coverage or payment of benefits.  Regulatory violations matter only

ORDER – 19

when deciding whether to award attorney fees or enhance damages.  Seaway offers no

argument for interpreting IFCA as it prefers.  So far as the court is aware, no Washington

court has addressed the issue.  The federal courts who have addressed the issue have

overwhelmingly interpreted IFCA in accordance with its plain language.[5]  This court, like

those before it, holds that IFCA does not create a cause of action solely for violation of

Washington's insurance regulations.

**D.     AIC, Not Fireman's Fund, Is Liable to Seaway.**

       The court now returns to the parties' threshold dispute over the roles of Fireman's

Fund and AIC.  Fireman's Fund asks the court to declare that even if AIC is potentially

liable, it is not liable as a matter of law because it did not issue the Policy.  Seaway, by

contrast, asks the court to rule that Fireman's Fund was either AIC's agent or its alter

ego.

       AIC was Ciao Bella's insurer.  The first page of the Policy plainly designates AIC

as the insurer.  Seaway does not argue otherwise, although it cites a certificate of

insurance that predates the Policy period in question and designates Fireman's Fund as

the insurer.  Stolle Decl. (Dkt. # 24), Ex. 4 (Feb. 27, 2009 certificate for 2008-09 policy

period).  Seaway cites no authority for the proposition that an outdated certificate of

insurance can override the plain language of an insurance policy.  Seaway suggests

nonetheless that Fireman's Fund is AIC's alter ego.  Seaway does not dispute that

Fireman's Fund and AIC are legally distinct entities, and it does not suggest that it could

satisfy the rigorous standards that govern an attempt to pierce AIC's corporate veil.  *See*

---

[5] *See, e.g., Lease Crutcher Lewis WA, LLC v. Nat'l Union Fire Ins. Co.*, No. 08-1862RSL, 2010 U.S. Dist. LEXIS 110866, at *15 (W.D. Wash. Oct. 15, 2010); *Weinstein & Riley, P.S. v. Westport Ins. Corp.*, No. 08-1694JLR, 2011 U.S. Dist. LEXIS 26369, at *80 (W.D. Wash. Mar. 14, 2011); *Polygon NW Co. v. Nat'l Fire & Marine Ins. Co.*, No. 11-92Z, 2011 U.S. Dist. LEXIS 56408, at *11 n.5 (W.D. Wash. May 24, 2011); *Pinney v. Am. Family Mut. Ins. Co.*, No. 11-175MJP; 2012 U.S. Dist. LEXIS 22328, at *13 (W.D. Wash. Feb. 22, 2012); *Country Preferred Ins. Co. v. Hurless*, No. 11-1349RSM, 2012 U.S. Dist. LEXIS 86334, at *7-8 (W.D. Wash. Jun. 21, 2012); *Hann v. Metro. Cas. Ins. Co.*, No. 12-5031RJB, 2012 U.S. Dist. LEXIS 111734, at *4-5 (W.D. Wash. Jul. 30, 2012) (declining to certify question to Washington Supreme Court); *Morella v. Safeco Ins. Co.*, No. C12-672RSL, 2013 U.S. Dist. LEXIS 53255, at *11-12 n.2 (W. D. Wash. Apr. 12, 2013) ("[A] regulatory violation, standing alone, does not trigger [IFCA].").

ORDER – 20

*Meisel v. M & N Modern Hydraulic Press Co.*, 645 P.2d 689, 692 (Wash. 1982) ("First, the corporate form must be intentionally used to violate or evade a duty; second, disregard must be necessary and required to prevent unjustified loss to the injured party.") (internal quotation omitted). Instead, its "alter ego" argument relies solely on a single sentence from *Chicago Title Ins. Co. v. Wash. Ins. Comm'r*, 309 P.3d 372, 380 (Wash. 2013). In that sentence, the court cited to precedent establishing that "if an insurer [can] do business only through an authorized agent, that agent acted as the insurer's 'alter ego' and could bind the insurer through its acts." *Id.* (citing *Miller v. United Pac. Cas. Ins. Co.*, 60 P.2d 714 (Wash. 1936). Seaway ignores that neither the *Chicago Title* court nor the *Miller* court suggested that an insurer's agent becomes its "alter ego" in the sense that it loses its identity as a separate entity. Instead, the agent can become an "alter ego" merely in the sense that its acts bind its principal. The court cannot, as a matter of law, treat Fireman's Fund as Seaway's insurer.

There is substantial evidence that Fireman's Fund acted as AIC's agent for many of the key events giving rise to the extracontractual liability to Seaway. Mr. Dobran, for example, declares that although Fireman's Fund employs him, he adjusts claims for AIC. Dobran Decl. (Dkt. # 21) ¶¶ 1-2. Mr. Dobran is the only Fireman's Fund employee who consistently identified himself as a representative of AIC for purposes of this dispute. Others working on Fireman's Fund's behalf did so inconsistently or not at all. When outside counsel responded to Seaway's tenders in 2012, it expressly did so on behalf of Fireman's Fund. That may have been an error, but a jury could conclude that Fireman's Fund was aware of the error and did nothing to correct it. On these facts, a jury could find an agency relationship.

That Fireman's Fund may have been AIC's agent, however, means little without authority which makes an agent *liable to third parties* for acts within the scope of the agency. Seaway cited no such authority, indeed, it did not even argue that Fireman's Fund was liable as an agent. It merely requested judgment as a matter of law that

ORDER – 21

Fireman's Fund acted as AIC's agent.  As the court has already noted, Seaway would have to prove Fireman's Fund's agency at trial.  But on this record, there is no reason for Seaway to do so.  The court rules that Seaway has waived any argument that Fireman's Fund is liable *to Seaway* for acts it undertook as AIC's agent.

Because Fireman's Fund did not insure Seaway, it cannot be liable for breach of the Policy.  As to Seaway's extracontractual claims, it offered no argument that Fireman's Fund could bear extracontractual liability to Seaway for acts within the scope of its agency for AIC.  The court thus concludes that even though Fireman's Fund was the face of Seaway's insurer for many of the events giving rise to this lawsuit, Fireman's Fund is not liable to Seaway as a matter of law.

**E.      The Court Denies Fireman's Fund's Motion to Strike.**

Fireman's Fund's opposition to Seaway's cross-motion for summary judgment includes a four-sentence motion to strike virtually every piece of evidence that Seaway offered.  The motion targets more than 20 exhibits, asserting that they either lack "proper authentication" or that they "contain hearsay."  Fireman's Fund made no effort to explain how any individual exhibit was inauthentic and it made no effort to identify any hearsay statement.  The court denies Fireman's Fund's motion for that reason.

Fireman's Fund's motion to strike is troubling.  If Seaway had requested sanctions, the court might well have imposed them.  To begin, the court observes that Fireman's Fund does not suggest that any document on which Seaway relied is inauthentic.  It would be hard pressed to do so, since virtually every document it attacks is either a public record or correspondence between Seaway's counsel and counsel that Fireman's Fund hired.  The Federal Rules of Evidence demand nothing more than "evidence sufficient to support a finding that the item is what the proponent claims it is . . . ."  Fed. R. Evid. 901(a).  As to most, if not all, of the documents Fireman's Fund challenged, Seaway met that standard easily.  It appears that Fireman's Fund believes that it is sound litigation practice to challenge the authenticity of documents not because of

ORDER – 22

disputes over authenticity, but to burden opposing counsel with the exercise of demonstrating authenticity.  The court finds this to be neither sound litigation practice nor consistent with the professionalism and civility that this District demands of attorneys practicing before it.  Local Rules W.D. Wash., Intro. to Civil Rules, LCR 83.1(d)(2).

The court also observes that many of the documents Fireman's Fund challenges as containing hearsay are the statements of its own coverage counsel.  Coverage counsel undisputedly acted as Fireman's Fund's representative for many of the acts that gave rise to this suit.  Its statements to Seaway are not inadmissible hearsay.  Fed. R. Evid. 801(d)(2).

## IV.  CONCLUSION

For the reasons stated above, the court DENIES Defendants' motion for summary judgment (Dkt. # 19) except that it rules that Fireman's Fund is not liable to Seaway as a matter of law.  The court GRANTS Seaway's cross-motion for partial summary judgment (Dkt. # 26) except to the extent that it seeks to hold Fireman's Fund liable.

Having vacated the trial date and all pretrial deadlines at the parties' request (Mar. 17, 2014 ord., Dkt. # 36), the court sets December 8, 2014 as the trial date.  The clerk shall issue a new order resetting the pretrial deadlines that the court vacated.

DATED this 22nd day of April, 2014.

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 23